**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| HENRY PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-1326 (TSC) |
| | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | |
| TEAMSTERS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

This case arises out of Plaintiff Henry Perry's inability to obtain lifetime retiree health

benefits after working for the International Brotherhood of Teamsters (IBT) for seventeen years.

Defendants IBT and the Teamsters Benefit Trust (TBT) maintain that Plaintiff was not eligible

for lifetime retiree health benefits because he did not meet the required term or age criteria.

Plaintiff maintains that Defendants discriminated against him in violation of federal and state law

and improperly denied him benefits.  For the reasons stated below, the court will GRANT both

Defendants' motions to dismiss.  The court will DENY IBT's motion for sanctions.

## I.    BACKGROUND

Plaintiff Henry Perry, an African-American man, worked for the International

Brotherhood of Teamsters (IBT) from 1995 to 2012; first as a project organizer, then as an

officer of a local union in Memphis, Tennessee, and finally as an International Trustee.  (Am.

Compl. ¶ 14).  He was appointed Trustee to complete the term of a previous Trustee who had

retired.  (*Id.* ¶ 22).  After that term ended, Perry was re-elected to a second term as Trustee,

1

which ended on March 21, 2012.  (*Id*. ¶ 28).  Perry ran unsuccessfully for re-election again in the summer of 2011.  (*Id.* ¶ 41).

After losing the 2011 election, Perry applied for pension and lifetime retiree health benefits at IBT Headquarters in Washington, D.C.  (*Id.* ¶ 43).  He alleges that John Slatery, Director of the Benefit Trust Administration, informed him that at the end of his term he would be six days short for eligibility for lifetime health benefits.  (*Id*. ¶ 44).  Perry claims that he subsequently spoke with the IBT's General Secretary-Treasurer, Thomas Keegel, who assured him he would be retained for an additional six days in order to "bridge his time" so that he would be employed until age sixty-five and qualify for retiree health benefits.  (*Id*. ¶ 46, 49).

Perry states that, after several months, and believing he had been denied the health benefits, he sent a letter to IBT on April 6, 2012, asking for an explanation of the denial.  (*Id.* ¶ 47).  Three days later, he spoke to Slatery and IBT's General Counsel and Assistant to the General President about his benefits situation, and expressed his desire to appeal the denial of benefits.  (*Id*. ¶ 48).  According to Perry, Slatery told him that he would "forward" his appeal to the Health and Welfare Board of IBT's Benefit Trust.  (*Id*. ¶ 50).  Several days later, Perry received a letter dated April 11, 2012 from an IBT Benefits Manager informing him that he was ineligible for retiree health benefits because he had neither reached age sixty-five nor completed fifteen or more years of service.  (*Id*. ¶ 52; IBT Mot. to Dismiss Ex. 3).  The letter stated that he could contest the determination by bringing the issue to the "Administrative Committee of the International Union's health and welfare plan" by "inform[ing] the Administrative Committee, in writing, of [his] intentions and present[ing], in detail, all of the arguments and all of the evidence which [he] believe[d] supports [his] position on this issue."  (IBT Mot. to Dismiss Ex. 3).  The letter included the writer's phone number and email address in case of questions.  (*Id.*).

Perry then sent a letter to Slatery on August 1, 2012, describing his belief that Slatery intended to submit his appeal to the Health and Welfare Board.  (IBT Mot. to Dismiss Ex. 5). The next day, Perry's then-lawyer Neil Bruntrager sent a letter to Slatery stating that he had advised Perry that "the Teamsters ha[d] arbitrarily denied him a bridge of 15 days" in an apparently "discriminatory and retaliatory" manner and "because he has taken positions contrary to leadership."  (IBT Mot. to Dismiss Ex. 6).  Bruntrager stated that his "research and past dealings with the Teamsters have demonstrated that there have been several instances where an individual's employment has been bridged in order to meet [the] gap period" and obtain health coverage.  (*Id.*).

Perry obtained new counsel at some point between 2012 and 2013, who filed a Complaint on Perry's behalf in this court on March 21, 2014.  (ECF No. 1 in *Perry I*, No. 14-cv-484 (TSC)). The Complaint sought equitable relief under the Employee Retirement Income Security Act (ERISA) section 502(a)(1)(B), "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  (*Id.*).  The Complaint also alleged violations of the District of Columbia Wage Payment and Collection Law (DCWPCL).  (*Id.*).  Perry then filed an Amended Complaint alleging violations of the D.C. Human Rights Act and interference with benefits in violation of ERISA, as well as the original D.C. wage claims.  (ECF No. 5 in 14-cv-484; IBT Mot. to Dismiss Ex. 12).  In a second Amended Complaint, Perry alleged a count pursuant to ERISA section 502(a)(3) for failure to make plan disclosures, sought "reformation of the eligibility rule to set the lowest number of years of service of any employee similarly situated to Plaintiff to whom Defendant has awarded eligibility for retiree health care benefits," alleged breach of fiduciary duty, and alleged D.C. wage law violations.  (ECF No. 18 in 14-cv-484; *id.* Ex. 18).

On July 15, 2015, this court issued a memorandum opinion in *Perry I* addressing IBT's motion to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.  The court concluded that the obligation to disclose plan documents and to provide information about review of benefits determinations lies with the Plan, not the employer, and therefore Perry could not state a claim against IBT for failure to provide information, and that Perry was not entitled to reformation in order to "share in the benefit of [] violations" of the Plan terms that he alleged other "bridged" employees had received.  The court also declined to exercise supplemental jurisdiction over any D.C. claims.  *Perry v. Int'l Bhd. of Teamsters*, 118 F. Supp. 3d 1, *7 (D.D.C. 2015).  The court's accompanying order stated, "For the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED that Defendant the International Brother of Teamsters' motion (ECF No. 19) to dismiss the Second Amended Complaint is GRANTED; and it is further ORDERED that this case is dismissed without prejudice."  (14-cv-484, ECF No. 24).[1]

Approximately one month after this court issued its opinion in *Perry I*, Plaintiff's counsel sent another letter regarding Perry's benefits eligibility to the Teamsters Benefit Trust (TBT), the administrator of the IBT's employee benefit plan.  (Am. Compl. ¶ 67).  Two days later, on August 14, 2015, Plaintiff filed the instant suit (*Perry II*).  Plaintiff received a response from TBT on November 25, 2015, informing him that he was sixteen days short of reaching age sixty five when his employment terminated, and that he was not eligible for vacation days to reach age sixty five because he was a Class III employee who was not eligible, without written authorization, to accrue vacation.  (*Id.* ¶ 68-69).[2]  The letter stated:  "If you disagree with the

---

[1] The court takes judicial notice of all relevant filings from *Perry I*.

[2] The court is perplexed by TBT's statement in the letter that "[e]ven if Mr. Perry had been able to accrue vacation, he would have not have had enough accrued vacation to meet any of the

Trustees' decision, you have the right to bring suit in federal court under 29 U.S.C. Section

1132(a) to challenge the Trustees' decision.  Please be advised that the International Plan

provides that any lawsuit brought based on a claims or appeal denial will be untimely if filed

more than twelve months after the date of this letter."  (TBT Mot. to Dismiss, ECF No. 21,

Paterson Decl. Ex. C).

Perry's Amended Complaint names both IBT and TBT as Defendants, seeks benefits

under ERISA section 502(a)(1)(B), alleges unlawful interference and "discrimination" under

ERISA section 510 and requests relief under section 502(a)(3), and includes a count for violation

of the DCWPCL.  (*Id.* ¶ 73-92).  Defendants have moved separately to dismiss the complaint,

and IBT has moved for sanctions against Plaintiff for filing a suit which IBT claims is precluded

and time-barred.

## II.    LEGAL STANDARD

### A. Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim "tests the legal sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.

Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  Although a plaintiff may

survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely," the facts

---

retiree benefit eligibility tests because: With only six plus years of IBT service, to qualify for
retiree coverage he would have needed to reach age sixty-five when his active coverage ended;
as noted above, he was only 64."  The court understands Perry's argument to be that he was
somewhere between six and sixteen days short of his sixty-fifth birthday at retirement; therefore,
had he been credited additional days as vacation days, he would have technically reached age
sixty-five while still employed.  Ultimately, however, resolution of that fact does not change the
court's analysis.

alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citation omitted).  Moreover, a pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).  If the facts as alleged, which must be taken as true, fail to establish that a plaintiff has stated a claim upon which relief can be granted, the Rule 12(b)(6) motion must be granted. *See, e.g.*, *Am. Chem. Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013); *Clay v. Howard Univ.*, 82 F. Supp. 3d 426, 430 (D.D.C. 2015).

### B. Sanctions

Federal Rule of Civil Procedure 11 requires that an attorney certify that any pleading or paper she files with the court is, "to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:" (1) not intended to harass or cause delay or unnecessary expense; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" (3) contains factual contentions that are either already supported by evidence or will likely be supported by evidence after discovery; and (4) contains denials of facts that are either warranted by the evidence or, where explicitly indicated, "reasonably based on belief or a lack of information." Fed. R. Civ. Proc. 11(b).  The court may impose sanctions based on a violation of Rule 11(b) on its own accord or based on a motion by a party.  Fed. R. Civ. Proc. (11)(c).  But "once [a] district court finds that a pleading is not well grounded in fact, not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or is interposed for any improper purpose, 'Rule 11 *requires* that sanctions of some sort be imposed.'" *Rafferty v.*

*NYNEX Corp.*, 60 F.3d 844, 852 (D.C. Cir. 1995) (citing *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174-75 (D.C.Cir.1985) (emphasis added)).  Sanctions are not discretionary in this Circuit if a court finds an attorney has violated Rule 11.

## III.   DISCUSSION

Defendants IBT and TBT have both moved for dismissal under Rule 12(b)(6).  IBT contends that the suit is barred by *res judicata*, that it is untimely, that it fails to state a claim upon which relief can be granted, and that it fails to state a Wage Act claim under the DCWPCL.[3]  IBT further contends that the court should impose sanctions on Plaintiff's counsel for filing the suit.  TBT argues that it is not the right defendant for any of Plaintiff's claim, and that all claims against it should therefore be dismissed.

### A. Claims against IBT

#### i. *Res judicata*

The doctrine of *res judicata* comprises claim preclusion and issue preclusion, both of which IBT argues bar Perry's suit.

##### a. Claim preclusion

Claim preclusion "precludes the parties or their privies from relitigating issues that were or *could have been raised*" in a prior action that resulted in a final judgment on the merits. *Drake v. F.A.A.*, 291 F.3d 59, 66 (D.C. Cir. 2002).  The doctrine applies where there is (1) a final

---

[3] IBT also asks the court to treat Perry's original complaint as conceded and dismiss the amended complaint, which was filed more than 21 days after IBT filed its motion to dismiss, without leave of the court.  The court granted an extension for Perry to file an opposition to Defendant's motion to dismiss, but Perry did not request an extension to file an amended complaint.  Plaintiff requests that the court exercise discretion and extend the time to file the amended complaint under Federal Rule of Civil Procedure 6(b)(1)(B); Defendant responds that Plaintiff has not demonstrated "excusable neglect" as required by that subsection, nor filed a motion requesting the extension.  However, in the interest of reaching the merits, the court will exercise its discretion and treat the amended complaint as operative for purposes of this opinion.

judgment on the merits, (2) a claim by the same parties or their privies, and (3) a subsequent suit

based on the same cause of action. *I.A.M. Nat. Pension Fund, Ben. Plan A v. Indus. Gear Mfg.

Co.*, 723 F.2d 944, 946-47 (D.C. Cir. 1983).  Claims are based on the same cause of action when

they arise out of the same "nucleus of facts," *Drake*, 291 F.3d at 66, or involve any "rights of the

plaintiff to remedies against the defendant with respect to all or any part of the transaction, or

series of connected transactions, out of which the action arose."  *Stanton v. D.C. Court of

Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997) (internal quotation marks and citation omitted).  New

legal theories based on the same facts as an otherwise precluded claim are also barred.

For purposes of IBT's separate motion to dismiss, the parties, Perry and IBT, are the

same as in *Perry I*.  The cause of action is clearly the same:  Plaintiff challenges IBT's failure to

take action—such as "bridging" him with an additional short-term hire or vacation days—that

would have made him eligible for retiree healthcare.  Perry alleges a nearly identical series of

facts in both cases, which differ only by the inclusion of counsel's letter to TBT in November

2015 after the court's memorandum opinion in *Perry I*, and TBT's subsequent response.  Perry's

Amended Complaint does not allege any new cause of action based explicitly on IBT's conduct

after counsel sent the letter; rather, the claim is based on IBT's conduct prior to the end of

Perry's term in 2012.  Plaintiff cannot avoid any preclusive effect of *Perry I* by bringing legal

theories under different sections of ERISA in *Perry II* which are based on the same facts.

But there is some question as to the finality of the judgment in *Perry I*.  Dismissals

pursuant to Rule 12(b)(6) are generally considered final judgments on the merits.  *Federated

Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a

claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'") (internal

quotation marks and citation omitted).  Federal Rule of Civil Procedure 41(b) provides that

where the court dismisses a claim on motion of the defendant, "[u]nless the dismissal order states otherwise, a[n] [involuntary dismissal]—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." Fed. R. Civ. Proc. 41(b). The court's memorandum opinion in *Perry I* concluded that Perry had "state[d] no claim under ERISA," "dismisse[d] all federal claims," and "decline[d] to exercise jurisdiction over" Plaintiff's D.C. claims. *Perry I*, 118 F. Supp. 3d at 7. The accompanying order both granted IBT's motion to dismiss the complaint, and dismissed the case without prejudice.

Defendant contends that the *Perry I* order was intended to dismiss only the Wage Act claims without prejudice, and the ERISA claims with prejudice, but the order did not indicate any such differentiation. Defendant points instead to the language and substance of the memorandum opinion, implying that the court had no reason to dismiss the case without prejudice, having found, after two amendments of Perry's Complaint, that he failed to state a claim for relief under ERISA. Because dismissals of a complaint for failure to state a claim are, by default, adjudications on the merits and with prejudice, a dismissal without prejudice pursuant to 12(b)(6) is often for a specific reason, such as to give the plaintiff an opportunity to amend his complaint. *See, e.g.*, *Kamelgard v. Macura*, 585 F.3d 334, 339 (7th Cir. 2009) ("The usual exception" to the principle that "a dismissal on the merits is normally with prejudice and thus a bar to relitigation . . . is where the court gives the plaintiff an opportunity to cure the defect in his complaint by filing an amended complaint."). This court, by dismissing the entire case without prejudice, left open the opportunity to re-file a new case based on the same claim, but without any explicit reason for doing so. The memorandum opinion did not identify any apparently curable defects in the case, such as that it was brought under the wrong statute, or not yet

administratively exhausted.  Defendant therefore argues that the dismissal order was without

prejudice only as to Plaintiff's D.C. claims, and with prejudice as to his ERISA claims.

The court will stand by the plain language of the dismissal order.  Based on the language

of the order, Plaintiff could have reasonably believed not only that he could re-file, but also that

the dismissal was not appealable.[4]  Plaintiff therefore may have forfeited any ability to appeal

(the time for which has long run) because of his not unreasonable belief that judgment was not

final and that he could file again in this court.  To label the dismissal of Plaintiff's claim

"without prejudice," preventing appeal, but then find a subsequent complaint precluded, would

effectively prevent Plaintiff from exercising some of his rights in litigating his claim.  In order to

prevent any prejudice to Plaintiff's ability to have his case heard that could result from the

admitted ambiguity of the court's order, the court will treat the previous dismissal as one without

prejudice.

### b. Issue preclusion

Issue preclusion prevents a party from relitigating an issue of fact or law that has been

"actually litigated and resolved in a valid court determination essential to the prior judgment,"

even "in the context of a different claim."  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal

quotation marks and citation omitted).  IBT contends that Count II of Perry's Amended

Complaint, which alleges "unlawful interference pursuant to ERISA § 510," should be barred by

issue preclusion, which, like claim preclusion, requires a final judgment on the merits.  *B & B*

*Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015) ("the general rule is that

'[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment,

---

[4] Perry did file a Notice of Appeal with the D.C. Circuit, but then voluntarily dismissed the
appeal within several months.  *See* No. 14-cv-484, ECF Nos. 25, 27.

and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties . . . .'"") (quoting Restatement (Second) of Judgments § 27 (1982)).  Because the court has determined that the dismissal in *Perry I* was without prejudice and did not operate as an adjudication on the merits, issue preclusion is unavailable.

### ii. Timeliness

The parties agree that the applicable statute of limitations for Perry's ERISA section 510 claim is one year, as taken from the District of Columbia Human Rights Act (DCHRA).  (IBT Mot. to Dismiss at 19; P. Opp., ECF No. 16 at 8-9).  IBT argues that any potential section 510 claim accrued "no later than April 6, 2012, the date that [Perry] contends he appealed the denial of his retiree health benefits."  (IBT Mot. to Dismiss at 19).  Plaintiff's Amended Complaint alleged that the statute of limitations "restarted on November 25, 2015," when Plaintiff received a letter from TBT explaining the denial of his benefits and indicating that any appeal must be brought within one year.  (Am. Compl. ¶ 71-72).  IBT asserts that action by the TBT, which is a separate and distinct entity from IBT, cannot restart the clock for a claim against IBT.[5]

Plaintiff argues that DCHRA's "discovery rule" allowing for filing of a claim "within one year after the time that the plaintiff knew or should have known that the employment action was undertaken for an unlawful purpose," D.C. Code § 2-1403.16(a), means that the statute of limitations for the section 510 claim began to run upon receipt of TBT's letter.  Plaintiff argues that his claim in this case is timely because, while he was aware of his benefits denial earlier, he

---

[5] IBT also points out that Perry filed a discrimination claim with the District of Columbia Office of Human Rights, which determined the claim was untimely based on the April 6, 2012 letter Plaintiff sent to IBT, which started the one-year statute of limitations.  (IBT Mot. to Dismiss Ex. 5).  The court notes that Perry's claim with the Office of Human Rights was not an ERISA claim, but does appear to be based on the same facts.  However, the Office of Human Rights' timeliness determination is not binding on this court.

was not aware of the specific reason for the denial—which he characterizes as "the misclassification of him as a Class III employee"—until November 2015. (Opp. at 9). But Plaintiff filed this suit in August 2015, prior to receiving the November letter from TBT. Plaintiff's invocation of the discovery rule appears to be an attempt to have it both ways: to claim that he had not "discovered" the "cause in fact" of his alleged injury until November, but knew enough about the claim to file the lawsuit in August; while denying that he knew enough to file suit prior to August. Plaintiff's argument cannot succeed: either he knew the basis for this suit in August, in which case the statute of limitations had begun to run far earlier, as he alleges no other facts occurring between the denial letter of April 11, 2012 and August 2015 that implicate the statute of limitations or the discovery rule; or he did not know until November 2015, in which case the filing of this suit in August was either frivolous or prescient.

The very case Plaintiff references to explain the D.C. discovery rule demonstrates that the discovery rule does not apply. In *Brown v. Nat'l Acad. of Scis.*, 844 A.2d 1113, 1119 (D.C. 2004), the District of Columbia Court of Appeals found that the plaintiff could not invoke the discovery rule regarding when she heard a statement by another employee evincing discrimination towards her—because prior to that, "at the time she was given her termination letter . . . it was her conclusion that she was being terminated for impermissible discriminatory reasons." The court distinguished the case from one in which an employee believed conduct toward him was lawful until he discovered information that gave him reason to believe it was not. *Id.* (citing *Doe v. Medlantic Health Care Grp., Inc.*, 814 A.2d 939 (D.C. 2003)). Here, Plaintiff's counsel's August 2012 letter to IBT demonstrates that Plaintiff already believed that the IBT's failure to bridge him to qualify for benefits was unlawful; the discovery of information consistent with that theory therefore does not start the clock. The instant case resembles the facts

of *Brown* rather than *Doe*, the discovery rule is not applicable and the statute of limitations did not begin to run in November 2015.[6]

Plaintiff also asks the court to apply the doctrine of equitable tolling and stop the clock during the time period in which Plaintiff was engaged in exhausting his administrative remedies. Plaintiff suggests that he interpreted the court's dismissal order in *Perry I* as requiring Plaintiff to exhaust administrative avenues, prompting him to send the letter to TBT.  (Opp. at 13).  But tolling the time from the court's order in *Perry I* to the November 2015 letter would only save Plaintiff approximately four months, and would not solve his timeliness problem.  Plaintiff argues that Perry's "long and tedious struggle . . . regarding his efforts to get his appeal heard by the correct body" would justify equitably tolling the time between the April 2012 letter and the filing of suit.  ("Notice" at 15, ECF No. 23).  Plaintiff's allegations in *Perry I* and here include that he believed IBT was helping him get an appeal of his benefits denial to the appropriate forum for some time between 2012 and 2015.

The question whether administrative exhaustion is required for ERISA section 510 claims, such that equitable tolling would be appropriate, has not been addressed by the D.C. Circuit.  Other Circuits are split on the issue.  *Compare Smith v. Sydnor*, 184 F.3d 356, 364 (4th Cir.1999) (exhaustion not required for a statutory ERISA claim); *Richards v. Gen. Motors Corp.*, 991 F.2d 1227, 1236 (6th Cir. 1993) (overturning district court decision that had required exhaustion of section 510 claim); *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1205 (10th Cir. 1990) ("a plaintiff need not exhaust administrative remedies prior to bringing an action under § 510 of ERISA"); *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 n.4 (3d Cir.

---

[6] Defendant also contests Plaintiff's representation that the November 2015 letter resulted in his "discovery" of his classification as a Class III employee.  The court need not address this point because it finds the discovery rule inapplicable on other grounds.

1990) (exhaustion not required for § 510 claim); *and Amaro v. Cont'l Can Co.*, 724 F.2d 747, 752 (9th Cir. 1984) (exhaustion not required for § 510 claim); *with Counts v. Am. Gen. Life & Acc. Ins. Co.*, 111 F.3d 105, 109 (11th Cir. 1997) ("We have consistently stated that the exhaustion requirement applies both to actions to enforce a statutory right under ERISA and to actions brought to recover benefits under a plan") *and Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996) (requiring exhaustion of a § 510 claim).

The question before this court is not whether exhaustion should be required for a section 510 claim, but whether the Plaintiff should benefit from equitable tolling. If he reasonably believed that exhaustion was necessary, regardless of whether it actually was, Plaintiff would have grounds for a favorable exercise of equitable tolling. Although the clear majority of Circuits have not required exhaustion of a section 510 claim, the absence of direct precedent in this Circuit suggests that Plaintiff's belief that exhaustion was required was not unreasonable. Plaintiff's alleged inability to find the right forum for his appeal is less credible. Not only did Plaintiff's counsel state in a June 7, 2013 letter to Slatery that Plaintiff was "not filing an appeal," (Am. Compl. ¶ 63), but Plaintiff's original denial letter in April 2012 contained a contact number and email address through which Plaintiff could contact the IBT's benefits manager if he had any questions. Plaintiff complains that the April 11 letter from the benefits manager "did not identify the members of the Administrative Committee or where to send the appeal," (Am. Compl. ¶ 53), but does not allege that he ever contacted the writer to ask for that information. Plaintiff's apparent steadfast, but unsubstantiated, belief that Slatery was going to "forward" his appeal—based upon which he argues the court should equitably toll the statute of limitations for the *Perry II* suit because Plaintiff believed he was pursuing his administrative

remedies—is not enough.  The court declines to exercise equitable tolling, and finds the Complaint untimely.

### iii. Failure to state a claim

Although the court finds that this suit is not timely, it will also address IBT's argument that dismissal is warranted under Rule 12(b)(6) because the Complaint fails to state a claim upon which relief can be granted.  IBT argues that Plaintiff's section 510 claim is "essentially based on the decision of the IBT to not rehire him in some other capacity for six (6) days after his term of elective office expired and he retired."  (IBT Mot. to Dismiss at 20).  IBT argues that such hiring decisions are not covered by section 510.  Plaintiff responds, and the court agrees, that Plaintiff's claim is not comparable to a failure to hire.  Plaintiff does not allege that IBT acted unlawfully *after* his term expired, but rather that IBT did not treat him appropriately *as an employee* by failing to "bridge" him.  Additionally, it appears from the record that there was a procedure by which IBT could have "bridged" Plaintiff, with written authorization to classify him as a Class II employee eligible to accrue vacation.  (*See* ECF No. 21, Paterson Decl. Ex. C. ("An elected . . . International Trustee-International Representative who also holds a senior staff position with the International Union and who does not hold a position with an IBT affiliate or other employer that provides for vacation and sick leave, may be classified as a Class II employer upon the written approval of the General President and General Secretary-Treasurer or their designee"); *see also* Rule 11 Letter, ECF No. 25-2 Ex. 1 at 35, (Plaintiff's deposition testimony in an unrelated proceeding explaining that he was not otherwise receiving vacation time from the Local during the last two years of his employment.)).

But Plaintiff's claim has a larger problem: the meaning of "discriminate" in ERISA's section 510, which reads in relevant part:

> It shall be unlawful for any person to discharge . . . or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140.  In other words, "[s]ection 510 of ERISA guarantees that no employee will be terminated where the purpose of the discharge is the interference with the employee's pension rights." *May v. Shuttle, Inc.*, 129 F.3d 165, 169 (D.C. Cir. 1997).  The discrimination or interference to which the statute refers is conduct by an employer that discriminates against an employee in order to prevent the employee from attaining benefits, or interferes with an employee's ability to attain benefits.  "Discrimination" in ERISA is not discrimination on the basis of race or sex or religion, but rather discrimination against employees exercising their rights under the statute.

Perry's Amended Complaint alleges that IBT "discriminated against [him] by treating him differently than similarly situated employees as to benefit coverage," and "treated [him] differently from other employees as to access to benefits based upon his race."  (Am. Compl. ¶ 82, 83).  An allegation that IBT failed to "bridge" Perry in order to qualify for benefits, but did "bridge" other similarly situated Caucasian employees, might state a claim under Title VII of the Civil Rights Act, but it does not state a claim under ERISA, which does not provide any remedy for racial discrimination in the workplace.  To state a claim of interference or discrimination under ERISA, Perry would need to have alleged that IBT discharged him in order to prevent him from attaining benefits.  But Perry was not discharged, his term expired.  Therefore, a properly pleaded interference claim would also not have survived dismissal under Rule 12(b)(6).[7]

---

[7] The court notes that Perry's Amended Complaint listed both a section 510 count, "Count II," and a "Count I" alleging wrongful denial of benefits under section 502(a)(1)(B), which allows a beneficiary to sue "to recover benefits due to him under the terms of his plan, to enforce his

### iv. Wage Act claims

The court declined to exercise supplemental jurisdiction over Perry's D.C. Wage Act claims in *Perry I*.  In the interest of finality, judicial economy, and the Plaintiff's ability to have his D.C. Wage Act claims considered on the merits at all, the court will exercise supplemental jurisdiction here and address the pendent state-law claims.  The D.C. Circuit has explained that, pursuant to 28 U.S.C. § 1367, "[a] district court may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal claims are dismissed."  *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005).  While "in the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims," *id.* at 424, the court finds that the lengthy history of litigation in this case—which deals with facts that occurred six years ago and which was originally filed three years ago—makes it an unusual one.

IBT argues that Perry is not covered by the DCWPCL and that he fails to plead facts that state a Wage Act claim.[8]  The statute protects "employees," defined by both prior versions of the

---

rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  IBT's motion to dismiss argues that both counts fail to state a claim under Rule 12(b)(6); Plaintiff's opposition only addresses the section 510 claim brought under section 502(a)(3).  The court finds Plaintiff has conceded the section 502(a)(1)(B) claim. Further, Plaintiff does not allege facts demonstrating any entitlement under the plan terms; in fact, his claim that he should have been "bridged" impliedly concedes that he was *not* eligible under the plan terms as they stood.  His attempt to enforce benefits "due to him under the Plan . . . as modified by the TBT's Plan exception," (Am. Compl. ¶ 78), does not state a section 502(a)(1)(B) claim, since it is the plan terms that control.  *See CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011) (explaining that district courts are not permitted to alter plan terms for § 1132(a)(2) claims).  Perry's section 502(a)(1)(B) claim would therefore fail even if not conceded.

[8] Plaintiff's opposition specifically argues that the DCWPCL claim is timely.  Because IBT did not contend that the DCWPCL claim is not timely, the court will assume timeliness.

statute that were in effect until February 25, 2015 as "any person suffered or permitted to work by an employer except any person employed in a bona fide executive, administrative, or professional capacity (as such terms are defined and delimited by regulations promulgated by the Council of the District of Columbia)."  D.C. Code § 32-1301 (1956; 2013).  The regulation defines someone in a "bona fide administrative capacity" as an employee who does office or non-manual work "directly related to management policies or general business operations," who has "authority to make important decisions;" who regularly assists executive or administrative employees; who does not spend more than 20 percent of the workweek on work that is not administrative; and who is paid at least $155 per week.  D.C. Mun. Reg. tit. 7, § 999.2 (2014).  The regulation also contains a "[s]pecial proviso" for "high salaried administrative employees" that states:

> [A]n administrative employee who is paid on a salary or fee basis at a rate of at least $250 a week is exempt if (a) his or her primary duty consists of responsible office or non  manual work directly related to management policies or general business operations or (b) responsible work in the administration of a school system or educational establishment or institution or department or subdivision thereof that is directly related to the academic instruction or training; and such primary duty includes work requiring the exercise of discretion and independent judgment.

*Id.*  IBT maintains that the role of a Trustee is "well-established" and clearly satisfies the exemption requirements.  Plaintiff responds that "his primary duty did not include work directly related to [IBT's] management policies or general business operations."  (Opp. at 17).  The court finds that Perry's allegations that he did not conduct work related to IBT's general business operations as an International Trustee do not pass the *Iqbal* plausibility threshold.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Given the usual meaning of the word "trustee," which the Oxford English Dictionary defines as, *inter alia,* "any of group of people appointed to manage the affairs of an institution," Oxford, II *The New Shorter Oxford English Dictionary* 3411 (4th ed. 1993), the court finds it implausible that Perry did not perform tasks meeting the regulatory definition of an "administrative capacity."  Perry has not thoroughly explained his job responsibilities as a Trustee (beyond stating "[h]is primary duties required him to address the issues with his union local or address issues as assigned by the General President," (Compl. ¶ 24)); he has only conclusorily stated that he did not perform the job of an administrative-capacity employee.  The IBT Constitution adopted by the 27th International Convention, on which Plaintiff's Amended Complaint alleges he took his oath, (Am. Compl. ¶ 23), states:

> There shall be an Audit Committee consisting of the International Trustees and an independent accounting professional selected by the Trustees with the approval of the General Executive Board . . . The Audit Committee shall be responsible for reviewing the International Union's books and records on a quarterly basis . . . The Audit Committee shall be responsible for reviewing the work and duties of the Union's Internal Audit Department . . . The Audit Committee shall investigate any complaints involving the International Union's financial matters or other alleged violations of the Union's internal code of conduct and shall report its findings to the General Executive Board.

(IBT Mot. to Dismiss Ex. 2 at 62-64).[9]  While an employee's actual job duties might ordinarily be a fact question inappropriate for resolution at the motion to dismiss stage, that is not the case here, where there exists a job description that demonstrates that at least one of Perry's "primary duties" met the function of an administrative capacity employee.  Plaintiff's claim that quarterly audits were not a significant enough part of Perry's role as International Trustee to constitute a

---

[9] The court considers exhibits provided by Defendants that are referenced in the Complaint, including the IBT Constitution, the Plan document, and correspondence between Perry and Defendants, without converting the motion to one for summary judgment.  *See, e.g., Robinson v. D.C. Hous. Auth.*, 660 F. Supp. 2d 6, 10 n.5 (D.D.C. 2009) (courts can consider documents that are referenced in the complaint and central to the plaintiff's claims without converting).

"primary duty" is not plausible.  In light of Plaintiff's exemption from the statute as an administrative employee, the court finds Plaintiff has not stated a claim under the DCWPCL.

Moreover, Plaintiff does not allege that he was actually entitled to vacation pay; he alleges that he *should* have been entitled to vacation pay.  A DCWPCL claim must plead facts demonstrating that "(1) prior to performance of the work, there was an agreement entitling the employee to accumulate leave, and (2) as of the termination date he or she had accumulated the claimed number of days."  *Nat'l Rifle Ass'n v. Ailes*, 428 A.2d 816, 821 (D.C. 1981).  Plaintiff has not pleaded the existence of any such agreement.  Plaintiff states that "[s]everal members of the General Executive Board who served with Plaintiff who met [an] *exception* were paid vacation pay when they retired."  (Am. Compl. ¶ 27) (emphasis added).  Alleging that there was a rule, pursuant to an exception from which some other employees received vacation pay, does not establish that Plaintiff was entitled to vacation pay within the meaning of the DCWPCL.

### B. Claims against TBT

Perry named TBT as a Defendant for the first time here in *Perry II*, only as to Count I under section 502(a)(1)(B).  TBT contends that "Plaintiff's case is not an ERISA case" but rather a "dispute with . . . IBT."  (TBT Mot. to Dismiss at 1).  The court agrees.  The basis of Perry's Complaint is that IBT failed to "bridge" him sufficient time to qualify him for retiree health coverage.  Perry cannot sue TBT to enforce the terms of the Plan to obtain health benefits because Perry acknowledges that he was never eligible under the terms of the Plan.  While this court certainly has jurisdiction to hear the claim, particularly in light of TBT's November 25 appeal letter's statement that Perry could file suit under ERISA section 502, Perry's allegations necessarily fail to state a section 502(a)(1)(B) claim against TBT.  ERISA's role is to "protect contractually defined benefits," *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985),

and "it countenances only such relief as will enforce '*the terms of the plan*'." *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1548 (2013).  ERISA "does not . . . authorize appropriate equitable relief *at large*." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 253 (1993) (internal quotation marks omitted).  Plaintiff seeks relief that is simply not authorized by ERISA.

TBT argues that it cannot be held to a promise for benefits from an IBT employer or manager.  *See, e.g.*, *Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1041 (2d Cir. 1985) (abrogated on other grounds) ("representations made . . . by a Union representative are insufficient to support a claim of estoppel against the Plan").  Under the circumstances presented here, the court agrees.  Perry has not alleged any claim for equitable remedies under section 502(a)(3) against TBT, and such remedies are in fact not available for violations of section 502(a)(1)(B), which is the only count Perry asserts against TBT.  Any IBT promises to "bridge" Plaintiff do not give him a right to "reformation" of the Plan under section 502(a)(1)(B), to be exercised against TBT, requiring it to conform to such promises.  Generally, courts have suggested that reformation in the ERISA context may only be available where there is a conflict between a Summary Plan Description and the Plan Document's terms, leading to a mistaken belief as to the Plan terms, or some other type of mistake or fraud.  *See CIGNA Corp. v. Amara*, 563 U.S. 421, 440-41 (2011) (discussing reformation as a possible equitable remedy available under section 502(a)(3) where employees had been affirmatively misled); *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012) (denying reformation as 502(a)(3) remedy absent fraud or mistake); *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 183 (4th Cir. 2012) (finding equitable remedies available to plaintiff who sued for breach of fiduciary duty after Plan sponsor continued to accept premiums for plaintiff's daughter, despite her actual ineligibility for coverage for life insurance through plaintiff, and then refused plaintiff's claim

for death benefits).  Reformation has not been recognized as a general remedy where a participant's request for benefits arises not out of any affirmatively misleading representations by the Plan or employer, but out of a belief that other employees have received benefits not in conformity with established Plan documents.

While Plaintiff attempts to plead the existence of a rule allowing for "bridging" that was within TBT's purview—claiming that "Plaintiff is seeking to enforce the TBT's interpretation of both the written and unwritten rule that the Trustees of the TBT have applied to other similarly situated participants"—the court remains persuaded that Plaintiff seeks enforcement of what he perceives to be an exception to the Plan terms, which is not available under ERISA.[10]  Plaintiff has not alleged any fraud, mistake, or affirmative misrepresentation that would implicate equitable remedies under section 502(a)(3); he has only referenced equitable relief under 502(a)(3) in the context of his section 510 "discrimination" claim.

### C. Sanctions

IBT asks the court to impose Rule 11 sanctions, in the form of attorney fees and costs on Plaintiff and his counsel for filing a complaint "after having knowledge of information that establishes that [Plaintiff] lacked any reasonable basis for filing or maintaining the lawsuit." (Mot. for Sanctions, ECF No. 25 at 1).  Rule 11(c)(2) provides that a party seeking sanctions shall serve notice on their opposition of their intent to ask the court for sanctions, and give the opposing party twenty-one days to withdraw the "challenged paper, claim, defense, contention, or denial."  Fed. R. Civ. Proc. 11(c)(2).

---

[10] Because Plaintiff, as he acknowledges, has not alleged a section 510 claim against TBT, the court will not address Plaintiff's five pages of argument in opposition explaining why a section 510 claim is available.  (Opposition to TBT Mot. to dismiss at 7-11).  It appears Plaintiff seeks to augment his opposition to IBT's motion to dismiss, which is procedurally inappropriate here.

IBT sent Rule 11 notice to Perry, resulting in a series of confusing filings, which the court will briefly describe. IBT's Rule 11 letter contained a number of exhibits that IBT asserts demonstrate that: (1) Perry's ERISA claim in *Perry II* is barred by the statute of limitations; (2) IBT did not engage in discriminatory conduct prohibited by section 510; (3) Perry is not entitled to vacation pay; and (4) Perry and his counsel were aware of all of that information prior to filing suit. IBT sent the Rule 11 letter on February 10, 2016. (Mot. for Sanctions, ECF No. 25-2).

Plaintiff appears to have interpreted the Rule 11 letter as objecting not to the filing of the entire suit, but to a specific factual claim made in Plaintiff's opposition to TBT's motion to dismiss: that Plaintiff only became aware of his Class III status upon receipt of the November 25, 2015 letter.[11] Plaintiff then filed a "Notice of Correction" (ECF No. 23), attempting to clarify that although Plaintiff knew of his Class III status earlier, he did not know until the November 25 letter that his Class III status was the reason for his inability to accrue vacation pay. IBT then filed a motion to strike Plaintiff's "Correction," after which Plaintiff filed an opposition and IBT filed a reply. (ECF Nos. 24, 29, 29). IBT argued in its motion to strike that Plaintiff's "Correction" was actually an "improper attempt to further amend his amended complaint and submit new argument in support of his opposition to the IBT's Motion without first seeking leave of court to do so." (Mot. to Strike at 1). The day after IBT's motion to strike was filed, Plaintiff filed a motion for leave to file an amended opposition, which IBT opposed and Plaintiff then responded with a reply. (ECF Nos. 27, 31, 33). IBT then filed its motion for sanctions.

As an initial matter, the court notes that Plaintiff's attempted correction of its contention regarding when he knew about his Class III status or when he knew the consequences of his

---

[11] Plaintiff's belief that the letter related to Plaintiff's opposition brief appears to arise out of the timing: IBT sent the Rule 11 letter after Plaintiff filed his opposition and after IBT filed its reply.

Class III status is immaterial to the court's dismissal of the Complaint.  The facts pleaded would have relevance only to preclusion, on which the court found in Plaintiff's favor, or timeliness, and the court explained previously that Perry's discovery of the consequences of his Class III status would not implicate the discovery rule.  *See supra* note 6.  IBT's motion to strike and Plaintiff's motion to amend his opposition will accordingly be denied as moot.

IBT argues that Perry's section 510 claim is frivolous, because his previous counsel had already called the denial of benefits "discriminatory" as early as August 12, meaning that the *Perry I* claim, three years later, was clearly time-barred.  But, although the court declined to exercise equitable tolling in Plaintiff's favor, the argument that equitable tolling could apply was not so unreasonable as to warrant sanctions for the filing of an unquestionably untimely suit. The court has found no evidence of bad faith on Plaintiff's part.

IBT also argues that Plaintiff's attempt to fit his "discrimination" claim, regarding IBT's failure to "bridge" him, into ERISA's section 510 was without basis.  Although the court finds the allegations fail to state a claim and dismissal is warranted under Rule 12(b)(6), the court does not find the claim rises to the level of frivolousness that would constitute sanctionable conduct. Plaintiffs are entitled to argue that the law should be extended, modified, or reversed, and are free to ask the court to establish new law.  Plaintiff's claim, construed as an argument that ERISA should be interpreted to require employers and/or Plan sponsors to maintain consistent practices across employees, and to prevent employers from engaging in favoritism towards certain employees by doing so outside the Plan terms, is not unreasonable.

IBT also claims the DCWPCL claim is frivolous, but the court finds sufficient precedent suggesting Wage Act coverage is a fact issue to preclude sanctions.  That the court is dismissing the claim does not alone make it sanctionable.  IBT points the court to Plaintiff's deposition

testimony in an unrelated proceeding, in which he described his work as an International Trustee

as follows:

> Basically, we audit the records, where we have quarterly audit meetings each year,
> for the year . . .  the duties that I did was we would go over the finances of the
> International, audit finances every quarter, go through them, and detail all of that,
> along with other assignments that I may have prior to that.

(Rule 11 Letter, ECF No. 25-2 Ex. 1 at 7).  Although the court finds Plaintiff's allegation that his

job as a trustee does not meet the administrative capacity exemption to the DCWPCL

implausible, it is not so far from plausible as to be baseless and sanctionable.  The exemption

turns on Plaintiff's "primary duty;" rather than on whether Plaintiff conducted any work at all

related to general business operations.  Therefore, the court finds that sanctions against Plaintiff

are not warranted.

## IV.     CONCLUSION

For the foregoing reasons, the court will dismiss the Complaint as to all counts with

prejudice as to both Defendants.

A corresponding final, appealable order will issue separately.


Dated: March 24, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge